## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN UBRY, and KEVIN BOYCE, individually and on behalf of all similarly situated persons, <br><br>               Plaintiffs, <br><br> v. <br><br> METZ CULINARY MANAGEMENT, LLC f/k/a METZ CULINARY MANAGEMENT, INC., METZ ENTERPRISES, INC., and DOE DEFENDANTS 1-10, <br><br>               Defendants. | JURY TRIAL DEMANDED <br><br> No. 3:24-CV-00039 <br><br> (Judge Mehalchick) |

### AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Dawn Ubry ("Ms. Ubry") and Kevin Boyce ("Mr. Boyce") (collectively, "Plaintiffs"), by and through their counsel, Mobilio Wood, and Cohn Lifland Pearlman Herrmann & Knopf LLP, individually and on behalf of all others similarly situated, allege as follows:

### INTRODUCTION

1. This lawsuit arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 260.1, *et seq.* ("PMWA"), and Pennsylvania common law (together with the PMWA, the "PA Laws"), as a result of the failure of defendants Metz Culinary

Management, LLC f/k/a Metz Culinary Management, Inc., and Metz Enterprises, Inc. (collectively, "Defendants" or "Metz") to pay Plaintiffs, and other similarly situated employees who are members of the Collective and Class defined herein, all earned wages.

2.     Plaintiffs bring this action as: (i) a collective action pursuant to the FLSA; and (ii) a class action pursuant to Pennsylvania statutory and common law and Rule 23 of the Federal Rules of Civil Procedure, to recover unpaid wages and unpaid overtime wages.

3.     Plaintiffs, as well as the Collective and Class members, are persons who perform or performed work for Defendants as TGI Fridays restaurant servers (collectively, "Servers", and each, individually, a "Server").

4.     Due to Defendants' uniform policies and practices, Servers have been: (i) prohibited and/or discouraged from clocking-in, (ii) encouraged and/or permitted not to clock-in for the full amount of hours they worked and thus were not paid for the hours they worked, and (iii) improperly required to perform non-tipped work at the tip-credit wage.

5.     This was accomplished in several ways.

6.     First, Servers, at all relevant times, regularly were required and/or encouraged to not clock-in until customers arrived and were seated, to perform

assigned work before clocking in, and/or to clock-out and continue working after their scheduled shifts.

7.     Second, Defendants, at all relevant times, paid Servers sub-minimum hourly wages under the tip-credit provisions of the FLSA and PMWA.  Those provisions permit employers of tipped employees to pay wages less than the minimum wage, so long as employers comply with other requirements of the tip-credit provisions of the FLSA and PMWA.

8.     Pursuant to Defendants' uniform policies, Servers were required to perform non-tipped work, such as maintenance and preparatory work, in excess of twenty percent (20%) of their time at work in a given workweek, and/or for continuous periods of time in excess of thirty (30) minutes, which does not comply with the tip-credit provisions of the FLSA and PMWA.

9.     Pursuant to Defendants' uniform policies, Servers also were required to perform non-tipped work that was unrelated to their tip producing work, which also does not comply with the tip-credit provisions of the FLSA and PMWA.

10.     Thus, Plaintiffs allege on behalf of the Class and Collective that their unpaid wage claims include: (i) unpaid wages for straight time hours worked for which they did not receive wages, (ii) unpaid wages for overtime work for which they did not receive overtime premium pay, and (iii) unpaid wages due to

Defendants' imposition of a tip credit, which reduced the hourly wages paid to Servers, when Defendants were not entitled to impose a tip-credit.

11.    As a result of the aforementioned pay practices, Plaintiffs and the members of the Collective and Class (defined below) were illegally under-compensated for their work.

## CLASS AND COLLECTIVE DEFINITIONS

12.    Plaintiffs bring this suit on behalf of the following similarly situated collective:

> All individuals who perform or performed work for one or more of Defendants' TGI Fridays restaurants as Servers, at any time during the applicable limitations period covered by this Complaint (*i.e.*, two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 16(b) (the "Collective").

13.    Plaintiffs also bring this suit on behalf of the following similarly situated class of persons:

> All individuals who perform or performed work for Defendant as Servers at one or more of Defendant's TGI Fridays restaurants located within the Commonwealth of Pennsylvania at any time during the period beginning four years before the filing of this Complaint up to and including the date of final judgment in this matter (the "Class").

## PARTIES

14.     Ms. Ubry is an adult individual and a citizen of the State of New York.

15.     Ms. Ubry was jointly employed by Defendants as a Server at Defendants' TGI Fridays restaurant located in Dickson City, Pennsylvania from in or around November 2022 through in or around September 2023.

16.     Mr. Boyce is an adult individual and a citizen of the State of New York.

17.     Mr. Boyce was jointly employed by Defendants as a Server at Defendants' TGI Fridays restaurant located in Dickson City, Pennsylvania from in or around January 2023 through in or around March 2023.

18.     Defendant Metz Culinary Management, LLC f/k/a Metz Culinary Management, Inc. ("Defendant MCM") is a Pennsylvania limited liability company headquartered at Two Woodland Drive, Dallas, Pennsylvania 18612.

19.     Defendant Metz Enterprises, Inc. is a Pennsylvania corporation headquartered at Two Woodland Drive, Dallas, Pennsylvania 18612, and is the entity that nominally employed Plaintiffs.

20.     At all relevant times, Defendants have transacted business, including the employment of Plaintiffs and Servers, within the Commonwealth of Pennsylvania, including within this judicial district.

21.    In engaging in the conduct alleged herein, Defendants acted in the course, scope of, and in furtherance of the aforementioned employment relationships.

22.    Plaintiffs are unaware of the names and the capacities of those defendants sued as Doe Defendants 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiffs.[1]  Upon information and belief, Plaintiffs allege that at all relevant times each Doe Defendant was the officer, director, employee, agent, representative, alter ego, or coconspirator of each of the Defendants.  In engaging in the alleged conduct herein, Defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

24.    This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

---

[1] Plaintiffs believe there may be additional Metz entities employing Servers that have not been identified yet.  Should discovery reveal the existence of such restaurants, Plaintiffs will seek leave to amend their pleadings to add such additional entities as defendants.

25.     Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, because acts or omissions giving rise to the claims of the Plaintiffs alleged herein occurred within this judicial district, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein in this judicial district and, thus, are subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

26.     Three of the most basic protections afforded by the FLSA and the PA Laws  are the entitlement of employees: (i) to be paid for all hours worked, (ii) to be paid a minimum wage, and (iii) to be paid premium overtime compensation for all hours worked in excess of forty (40) hours per week, unless such employees are shown to be exempt from such protections.

27.     In violation of these basic protections, Plaintiffs and the members of the Class and Collective were: (i) not lawfully paid for all hours worked, (ii) not paid the applicable minimum wage, and (iii) not paid premium overtime compensation for all hours worked in excess of forty hours per week.

**A.    Defendants' Unified Operations and Defendant MCM's Control Over the Operations**

28.     Defendants are employers, joint employers, and/or "single employers" of Plaintiffs and the members of the Class and Collective.

29.     Defendants own, operate, manage and/or control approximately nine (9) TGI Fridays restaurants located in Pennsylvania and New Jersey, including:

a)     TGI Fridays, 620 Scranton-Carbondale Highway, Dickson City, Pennsylvania 18508;

b)     TGI Fridays, 882 Kidder Street, Wilkes-Barre, Pennsylvania 18702;

c)     TGI Fridays, 1840 East Third Street, Williamsport, Pennsylvania 17701;

d)     TGI Fridays, 4402 Southmont Way, Easton, Pennsylvania 18045;

e)     TGI Fridays, 10 North West End Boulevard, Quakertown, Pennsylvania 18951;

f)     TGI Fridays, 709 Route 70, Brick, New Jersey 08723;

g)     TGI Fridays, 601 Washington Avenue, Manahawkin, New Jersey 08050;

h)     TGI Fridays, 1279 Hooper Avenue, Toms River, New Jersey 08753; and

i)     TGI Fridays, 5901 Route 42 Washington Plaza, Turnersville, New Jersey 08012 (collectively, the "TGI Fridays Restaurants").

30.    The TGI Fridays Restaurants function as a single integrated enterprise.

31.    Upon information and belief, all of the TGI Fridays Restaurants are operated by Defendants under uniform policies and procedures applicable to all members of the Collective and Class, including subjecting Servers to the unlawful pay practices complained of herein.

32.    In fact, Defendant MCM maintains a single website (www.metzculinary.com) that incorporates each of the TGI Fridays Restaurants, where an individual can apply online to work as a Server an any of the TGI Fridays Restaurants.  The job description of "Server" on MCM's website is identical for each of the TGI Fridays Restaurants.

33.    The server job application forms on Defendant MCM's website are also identical for each of the TGI Fridays Restaurants.

34.    A separate "Employment Application" document available on Defendant MCM's website, which bears Defendant MCM's name and logo, asks, "If you are applying for a server/bartender position, are you old enough to serve or handle liquor and will you be able to establish that age if offered a job?", and further invites the applicant to select from a list of restaurants that he or she is "interested in in a position at," including "T.G.I. Friday's".

35.     Further, on its website, Defendant MCM identifies and/or refers to the TGI Fridays Restaurants as part of a single "division," and describes the restaurants' common approach to management.  Among other things, the website provides: (i) "Since 1993, our Friday's division has expanded to 9 locations in Pennsylvania and New Jersey."; (ii) "[W]e have many opportunities for advancement, outstanding benefits, and competitive pay.  Join us and build a fun, fulfilling career at TGI Fridays."; (iii) "Check us out and we hope you will consider becoming a part of the Metz family."; (iv) "Visit any Metz Culinary Management operated dining facility and you'll notice the difference right away: appealing décor, friendly staff, clean spaces, and fresh prepared meals, snacks, and other items that look as appetizing as they taste."; (v) "Our guest-focused approach stems from the franchise brands we've operated since 1994 . . . ."; and (vi) "We offer competitive wages and an assortment of benefits and programs designed for peace of mind at work and at home."

36.     In addition, Defendant MCM maintains a public Facebook page, where it touts its control over the TGI Friday's Restaurants' operations and employees.

37.     For example, several posts made by Defendant MCM on its public Facebook page refer to the TGI Fridays Restaurants as "our" restaurants, including:

a)  A November 9, 2022 post advertising certain promotions at the TGI Fridays Restaurants, which stated: "This Veterans Day, all veterans and active duty military personnel are invited to enjoy a selection of menu items, on us, **at any of our TGI Friday locations**, including Bethlehem, Brick Twp., Dickson City, Manahawkin, Mechanicsburg, Quakertown, Toms River, Turnersville, Wilkes-Barre, and Williamsport." (emphasis added).

b)  An October 2, 2020 post advertising a partnership with a local charity, which stated: "**Our TGI Fridays locations** are partnering with No Kid Hungry to end childhood hunger. Visit any of **our locations** in Pennsylvania (Wilkes-Barre, Dickson City, Williamsport, Bethlehem, Mechanicsburg, Quakertown) or New Jersey (Turnersville, Tom's River, Manahawkin, and Brick Twp) and when you donate* to No Kid Hungry, you will receive a coupon to use in November as a token of our appreciation." (emphasis added).

38.  Likewise, a photograph posted on Defendant MCM's Facebook page displays an advertisement for a December 2023 "Ugly Sweater Party" offering a photo booth, giveaways, games, and drink specials at one of the TGI Fridays Restaurants.  A separate photograph displays images of gift cards for the TGI Fridays Restaurants, and is accompanied by the caption, "This holiday season, don't forget to stop by your favorite Metz restaurants and pick up some gift cards. They make the best gifts!"

39.     Several posts by Defendant MCM on its public Facebook page make apparent Defendant MCM views the employees of the TGI Fridays Restaurants as part of MCM, and that MCM exercises control over those employees.

40.     For instance, one of Defendant MCM's Facebook posts provides, "Go back for seconds and support your local TGI Fridays during #TheGreatAmericanTakeout tonight! **We are here serve you** in Wilkes-Barre (PA), Dickson City (PA), State College (PA), Williamsport (PA), Bethlehem (PA), Mechanicsburg (PA), Quakertown (PA), Turnersville (NJ), Brick Twp. (NJ), Tom's River (NJ), and Manahawkin (NJ) with easy curbside pickup, plus we also have beer and wine to go!"  (emphasis added).

41.     In addition, a Facebook video posted by Defendant MCM is titled, "Salud and happy Cinco de Mayo! Jason from TGI Fridays (Wilkes-Barre) is here to show you how to make the perfect Margarita for enjoying at home," and displays a bartender inside of Defendants' Wilkes-Barre, Pennsylvania restaurant mixing a drink and providing mixing instructions.

42.     Similarly, a post made by Defendant MCM on its public LinkedIn page in or about December 2023 states: "Our TGI Friday teams know how to have fun during the holidays. For example, our Manahawkin team hosted a Ugly Sweater Party, while **our Dickson City team** invited the Grinch to dinner!

Undoubtedly, our guests were served great food and plenty of smiles during these events!" (emphasis added).

43. Further, upon information and belief, Defendant MCM has conducted a "General Manager Development Workshop" at its corporate office in Dallas, Pennsylvania for managers employed at the TGI Fridays restaurants.

44. More importantly, Andy Sweitzer, whose public LinkedIn page identifies him as the "Director of Operations at Metz Culinary Management," describes on his public LinkedIn page the substantial control that he and Defendant MCM exercise over the TGI Fridays Restaurants' operations, policies and procedures, and employees. Indeed, Mr. Sweitzer's LinkedIn page notes that he "[o]versees all aspects of the area's restaurant business, operations, and facilities ensuring standards of quality and service are maintained," and identifies several of his specific responsibilities as follows:

a) "Manages multiple businesses **including TGI Friday's**, . . . upholding standards and procedures while building sales, customer counts, market share and optimizing profits" (emphasis added);

b) "Determines current and future manpower and succession planning of restaurant managers within area";

c)      "Oversees management training programs to ensure an adequate number of managers are available internally to sustain growth of organization";

d)      "With the assistance of the GM, develops and monitors budgets for units";

e)      "Supports units in the effort to attract, train, develop and retain Team Members. Ensures units are following company standards for training and development of Team Members";

f)      "Ensures unit's successful implementation of all marketing strategies. Supports and inspects marketing strategies in building Guest counts and sales";

g)      "Holds self as well as direct reports accountable and ensures that all Team Members work in an environment of respect, understanding, caring, and fairness";

h)      "Responds to Guest and Team Member needs in a professional, prompt manner, finding a balance solution to each";

i)      "Responds to Guest services compliment/complaint calls for units in region and ensures unit management responds to compliment/complaint calls";

14

j) "Organizes, coordinates and conducts regional GM meetings dealing with sales, profits, Team Member management and management development"; and

k) "Conducts periodic reviews of inside and outside units to ensure that they are clean, well stocked with supplies, and are in good repair."

45. Throughout Plaintiffs' employment, Mr. Sweitzer regularly visited Defendants' TGI Fridays restaurant located in Dickson City, Pennsylvania, to ensure that the restaurant adhered to Defendants' standards, and praised management at the restaurant for purportedly keeping the restaurant's labor and productivity costs low.

46. Mr. Sweitzer was also tasked with leading an employee harassment investigation at Defendants' Dickson City, Pennsylvania restaurant and, at the conclusion of the investigation, advised Ms. Ubry that he had made the decision to terminate the target of the investigation.

47. Finally, Rick Sell, whose public LinkedIn page identifies him as the "Vice President of Restaurant Operations at Metz Culinary Management," states on his public LinkedIn page that his duties include: "**Lead operations for TGI FRIDAY'S**, Ruth's Chris Steakhouse and Wolfgang Puck Express franchise group." (emphasis added).

48.     Defendants are therefore jointly responsible for the employment practices complained of herein.

49.     In the alternative, based on the foregoing, Defendants are liable pursuant to a "single employer" theory of liability, in that they are nominally independent, but in practice operate as one integrated enterprise.

50.     Additionally, upon information and belief, the wrongful employment practices complained of herein were applicable to all Servers employed at the TGI Fridays Restaurants, as Defendants controlled and utilized common labor policies and practices at the TGI Fridays Restaurants.

**B.     Duties and Responsibilities of Defendants' Servers**

51.     Defendants employ hourly-paid Servers to wait on patrons at the TGI Fridays Restaurants.

52.     The primary job duties and responsibilities of Servers consist of, among other things, greeting customers and presenting menus, making food suggestions based on customer preferences, taking customer food and/or drink orders, serving customer food and/or drink orders, and delivering customer checks and collecting payment.

53.     Defendants' Servers were and are non-exempt employees under the FLSA and PMWA.

54.     Although Defendants pay their Servers an hourly wage, the bulk of Servers' income comes from gratuities left by customers.

55.     Defendants employed approximately twenty (20) to thirty (30) Servers at any given time at Plaintiffs' restaurant, and upon information and belief, employ a similar number of Servers at all of the TGI Fridays Restaurants.

**C.    The Tip Credit Provision and Requirements Under the FLSA and PMWA**

56.     Rather than pay Servers the applicable minimum wage, Defendants elected to impose upon Servers a tip credit and pay them less than the applicable minimum wage.

57.     In certain circumstances, the FLSA and PMWA permit an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.

58.     The maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

59.     The PMWA mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour. Thus, under the PMWA, the maximum tip credit is $4.42 per hour.

60.     As a result of Defendants' imposition of a tip credit, Plaintiffs and the members of the Class and Collective were forced to perform minimum wage work for free (in the case of hours worked off-the-clock) or at an hourly rate that was less than the minimum wage.

61.     However, an employer is <u>not</u> permitted to take a tip credit against its minimum wage obligations under the FLSA or PMWA when: (i) it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupations; or (ii) it requires its tipped employees to perform non-tipped work that, although related to the tipped employee's occupations, exceeds twenty (20) percent of the employees' time worked during a workweek and/or is performed for a continuous period of time that exceeds thirty (30) minutes.

62.     As set forth herein, Defendants have violated these provisions by requiring Servers to perform work that is unrelated to their tipped occupation and only paying them the sub-minimum tip-credit wages.

63.     In addition, Defendants have further violated these provisions by requiring Servers to perform non-tipped work that – although arguably related to their tipped occupation – exceeds twenty (20) percent of their time worked in a given week and/or is performed for a continuous period of time that exceeds thirty (30) minutes.

**D.    Defendants Require Servers to Perform a Substantial Volume of Side Work, but Nonetheless Claim a Tip Credit for All Hours Worked**

64.    As noted above, Defendants require their Servers to perform non-tip-generating work, commonly referred to as "side work".  Examples of side work include, but are not limited to: (i) preparatory and workplace maintenance tasks such as rolling silverware, cutting fruit, and stocking various items, and (ii) pre-closing cleaning tasks, such as cleaning booths, chairs, tables, and floors in a Server's assigned section, as well as cleaning and maintaining other areas of the restaurant.

65.    These "side work" tasks fall into one of two categories: (i) side work not related to Servers' tipped occupations; and (ii) side work related to Servers' tipped occupations.

66.    Servers regularly performed "side work" tasks at the beginning, end, and throughout the course of their shifts.

67.    Due to the substantial volume of mandatory side work, Plaintiffs estimate that they and other Servers spent well in excess of twenty (20) percent of their time performing non-tip-generating work.

68.    Additionally, Plaintiffs and other Severs often spent in excess of thirty (30) minutes continuously performing non-tip-generating side work.

19

69.    For example, Defendants regularly scheduled Plaintiffs and other Servers who worked the opening shift to arrive thirty (30) minutes before the restaurant opened to the general public in order to begin performing non-tip-generating prep work.   However, due to the significant volume of prep work required to be completed, Plaintiffs and other Servers typically arrived forty-five (45) minutes to one (1) hour prior to the restaurant's opening time in order to begin their non-tip generating prep work.

70.    Plaintiffs and other Servers generally were unable to complete their opening prep work by the time that the restaurant opened and their first table was seated, and therefore continued performing prep work in between waiting on patrons.

71.    In addition, Plaintiffs and other Servers also performed side work throughout their shifts, known as "running" side work.

72.    Defendants also required Plaintiffs and other Servers to stay after their last customer had left and/or the restaurant closed for the day so that they could perform closing side work in order to ensure the restaurant was cleaned and prepared for the following day's business.

73.    Plaintiffs estimate performing one (1) hour to two (2) hours of closing side work before they could leave the restaurant after being "cut" (*i.e.*, no longer assigned tables to wait on).

74.     As described below, much of this side work was routinely performed off-the-clock.

75.     The precise amount of time Plaintiffs recorded as working each week is, upon information and belief, maintained in Defendants' employment and/or payroll records.

**E.     Defendants Regularly Require or Knowingly Permit Servers to Perform Side Work Off-the-Clock, and Do Not Compensate Them for the Time**

76.     From the outset of Plaintiffs' employment, Defendants' management instilled in them Defendants' desire that servers minimize their time spent on the clock by "managing" their hours.

77.     One example of this is Defendants' insistence that Servers strive to avoid overtime compensation.

78.     Indeed, such a directive was stressed repeatedly to Plaintiffs by their managers and coworkers within their first several days of employment.

79.     However, although facially discouraging overtime, Defendants routinely schedule Servers to work more than forty (40) hours per workweek.

80.     For instance, copies of Ms. Ubry's former schedules reflect that she was routinely scheduled to work in excess of forty (40) hours per week throughout her employment.

81.   In order to reconcile Defendants' stated policy of discouraging overtime with Defendants' management scheduling Servers to work more than (40) hours per week, Defendants' management advised Plaintiffs and other Severs that it is Servers' responsibility to "manage your hours."

82.   In other words, if Servers desire more hours and, in particular, to work more than (40) hours per week, in order to maximize their tip-generating revenue earned from waiting tables, they must "manage" their on-the-clock hours.

83.   As a result, and with Defendants' management's approval, Servers regularly arrive at the start of a designated shift and begin performing prep work, but do not punch-in until their first table of customers is seated.

84.   For example, Defendants schedule Servers who work the opening shift to arrive at 10:30 a.m., which is thirty (30) minutes before the restaurant opens to the public (11:00 a.m.), although Servers typically arrive to begin performing prep work between 10:00 a.m. and 10:15 a.m.  However, as a result of Defendants' directive that Servers appropriately "manage" their hours, opening Servers regularly do not punch-in until 11:00 a.m. or later.

85.   Likewise, Servers regularly punch-out after their last table of customers departs, and then perform their closing side work off-the-clock.

86.   Notably, in order for a Server to punch-in more than several minutes after his or her scheduled start time, Defendants' computerized timekeeping system

22

requires a manager to authorize the punch-in, thereby demonstrating Defendants' awareness of the conduct described herein and the willful nature of the violations.

87.     Further demonstrating the willfulness of Defendants' conduct, Ms. Ubry asked two of her managers, on separate occasions, why Defendants were so concerned about ensuring Servers work overtime hours off-the-clock, as Ms. Ubry was under the impression that Defendants would only need to compensate Servers at one and one-half (1.5) times their tip credit rate (*i.e.*, $2.83 per hour) if they worked overtime on-the-clock.   On both occasions, Ms. Ubry's managers explained that the reason Defendants required Servers to work overtime hours off-the-clock is because applicable law would require Defendants to compensate Servers at one and one-half (1.5) times the minimum wage (*i.e.*, $7.25 per hour) if they worked overtime on-the-clock.

88.     Accordingly, although Plaintiffs and other Servers regularly work more than (40) hours per week, they are not compensated at the appropriate overtime rate.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiffs bring this action on behalf of the Collective as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206,  207 and 216(b).  The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

90.   As described herein, Defendants regularly failed to compensate Servers for all hours worked, including for time spent performing prep work and closing side work before and after their shifts.

91.   Defendants also failed to compensate Servers for all hours worked in excess of forty (40) hours per workweek.

92.   In addition, Defendants have improperly applied a tip credit against the wages paid to Servers.

93.   Plaintiffs, having been employed by Defendants as Servers, and subjected to the same pay policies and unlawful pay practices applicable to all Servers, as set forth above, are similarly situated to the members of the Collective.

94.   Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and the Class for claims under the PA Laws.   The claims brought pursuant to the PA Laws may be pursued by all similarly situated persons who do not opt out of the Class pursuant to Fed. R. Civ. P. 23.

95.   Upon information and belief, the members of the Class are so numerous that joinder of all members is impracticable.   While the exact number of the members of the Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, as set forth above, Plaintiffs believe there are well over forty (40) individuals in the Class.

96.     The claims of Plaintiffs are typical of the claims of the Class they seek to represent.  Plaintiffs and the members of the Class worked for Defendants as Servers and were subject to the same compensation policies and practices, as set forth above.

97.     Common questions of law and fact exist as to the Class that predominate over any questions affecting Class members individually and include, but are not limited to, the following:

(a)     Whether Defendants failed to pay Servers the full minimum wage for each hour worked;

(b)     Whether Defendants had a uniform policy and/or practice of failing to pay Servers for all hours worked;

(c)     Whether Plaintiffs and the members of the Class and Collective were encouraged, expected, permitted, and/or required to work hours without proper compensation;

(d)     Whether Defendants' conduct in failing to pay Servers for all hours worked was willful;

(e)     Whether Defendants failed to pay Servers overtime compensation for all hours worked in excess of 40 per workweek;

(f)     Whether Defendants failed to pay Plaintiffs and the members of the Class and Collective the proper wages for time spent performing duties unrelated and not incidental to their tipped occupation;

(g)     Whether Defendants violated the applicable tip credit rules by requiring Plaintiffs and the members of the Class and Collective to spend over 20% of their work shifts performing non-tipped side work;

(h)     Whether Plaintiffs and members of the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

(i)      Whether Plaintiffs and members of the Class are entitled to restitution;

(j)      Whether Plaintiffs and the members of the Class are entitled to liquidated damages; and

(k)     Whether Defendants are liable for attorneys' fees and costs.

98.     Plaintiffs will fairly and adequately protect the interests of the Class as their interests are in alignment with those of the members of the Class. Plaintiffs have no interests adverse to the Class they seek to represent, and have retained competent and experienced counsel.

99.     The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.   The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

100.   Defendants have acted willfully and with a lack of good faith in their violations of the FLSA and PA Laws.

## COUNT I

## FAIR LABOR STANDARDS ACT: MINIMUM WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Collective)

101.   Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

102.   At all relevant times, Defendants were employers engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

103.   Specifically, at all relevant times, Defendant jointly employed and/or continue to jointly employ, Servers such as Plaintiffs and the members of the Collective, "engaged in commerce or in the production of goods for commerce" and "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," within the meaning of 29 U.S.C. § 203(s)(1)(A)(i).

104.   At all relevant times, Defendants also have had annual gross volume of sales made or business done in excess of $500,000, within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii).

105.   In addition, or in the alternative, Plaintiffs and members of the Collective regularly used the instrumentalities of interstate commerce in their work.

106.   At all relevant times, Defendants jointly employed Plaintiffs and each of the Collective members within the meaning of the FLSA.

107.   At all relevant times, Plaintiffs and members of the Collective were non-exempt employees under the FLSA and were entitled to be paid the federally-mandated minimum wage.

108.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Collective, at the appropriate minimum wage rate, as set forth above, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*

109.   Defendants' conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

110.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from the Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### FAIR LABOR STANDARDS ACT: OVERTIME WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Collective)

111.   Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

112.   Pursuant to Defendants' policies and procedures, Defendants willfully failed to pay overtime compensation to Servers for time spent performing prep work and closing side work before and after their shifts.

113.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Collective, the appropriate overtime compensation for all hours worked in excess of 40 hours per workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*

114.   Defendants' conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

115.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from the Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## **COUNT III**

**FAIR LABOR STANDARDS ACT: OVERTIME GAP TIME VIOLATIONS**
**(On Behalf of Plaintiffs and the Collective)**

116.   Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

117.   As set forth above, pursuant to Defendants' policies and procedures, Defendants willfully and regularly failed to pay Servers for time spent performing prep work and closing side work before and after their shifts.

118.   Due to Defendants' compensation policies and procedures, the total hours worked by Plaintiffs and the Collective, during weeks in which they were compensated for working less than 40 hours, actually exceeded 40 hours.

119.   For each week during which Plaintiffs and the members of the Collective worked more than 40 hours, in addition to the overtime claim set forth above, they are entitled to recover "overtime gap time" for any unpaid work under 40 hours.

120.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Collective, the appropriate straight-time compensation for all weeks in which total hours worked exceeded 40 hours per workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*

121.   Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

122.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as

liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT IV

### PENNSYLVANIA MINIMUM WAGE ACT:
### MINIMUM WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Class)

123.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

124.   At all relevant times, Plaintiffs and members of the Class were non-exempt employees under the PMWA and were entitled to be paid the Pennsylvania-mandated minimum wage

125.   Pursuant to Defendants' policies and procedures, rather than pay Plaintiffs and members of the Class the Pennsylvania-mandated minimum wage, Defendants improperly took a tip credit and paid them only the tip credit wage.

126.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Class, at the appropriate minimum wage rate, Defendants violated the PMWA, 43 P.S. § 260.1, *et seq.*

127.   Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants the amount of unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

## COUNT V

**PENNSYLVANIA MINIMUM WAGE ACT:
OVERTIME WAGE VIOLATIONS
(On Behalf of Plaintiffs and the Class)**

128.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

129.   At all relevant times, Plaintiffs and members of the Class were non-exempt employees under the PMWA and were entitled to be paid overtime compensation for all hours worked in excess of 40 hours per workweek.

130.   Pursuant to Defendants' policies and procedures, Defendants willfully failed to pay overtime compensation to Plaintiffs and members of the Class for time spent performing prep work and closing side work before, during and after their shifts.

131.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Class, the appropriate overtime compensation for all hours worked in excess of forty (40) hours per workweek, Defendants violated the PMWA, 43 P.S. § 260.1, *et seq.*

132.   Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants the amount of unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

## COUNT VI

**PENNSYLVANIA MINIMUM WAGE ACT:**
**OVERTIME GAP TIME VIOLATIONS**
**(On Behalf of Plaintiffs and the Class)**

133.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

134.   As set forth above, pursuant to Defendants' policies and procedures, Defendants willfully and regularly failed to pay Servers for time spent performing prep work and closing side work before and after their shifts.

135.   Due to Defendants' compensation policies and procedures, the total hours worked by Plaintiffs and the Class, during weeks in which they were compensated for working less than 40 hours, actually exceeded 40 hours.

136.   For each week during which Plaintiffs and the members of the Class worked more than 40 hours, in addition to the overtime claim set forth above, they are entitled to recover "overtime gap time" for any unpaid work under 40 hours.

137.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Class, the appropriate straight-time compensation for all weeks in which total hours worked exceeded 40 hours per workweek, Defendants violated the PMWA, 43 P.S. § 260.1, *et seq.*

138.   Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants the amount of unpaid wages, liquidated damages, and attorneys' fees and costs.

## COUNT VII

### VIOLATION OF PENNSYLVANIA COMMON LAW:
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

139.   Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

140.   Plaintiffs and the members of the Class were jointly employed by Defendants.

141.   At all relevant times, Defendants maintained a willful policy and practice of failing to compensate Servers for all hours worked per workweek, which resulted in Plaintiffs and other Servers being paid for less straight-time and overtime hours than they had worked.

142.   Defendants retained the benefits of their failure to compensate Plaintiffs and other Servers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

143.   Defendants were unjustly enriched by failing to compensate Plaintiffs and other Servers.

144.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the members of the Class suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiffs and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Collective, respectfully request that this Court grant the following relief against Defendants:

A.   Certification of this action as a collective action on behalf of the Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising the Collective members of the pendency of this action, and permitting the Collective members to assert timely FLSA claims in this action by filing individual Consent to Join Collective Action forms pursuant to 29 U.S.C. § 216(b);

B.   Certification of the action as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class;

C.   On the first claim for relief, an award of unpaid minimum wages and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

D.     On the second claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

E.     On the third claim for relief, an award of unpaid compensation for "overtime gap time" and an additional amount as liquidated damages to Plaintiffs and members of the Collective;

F.     On the fourth claim for relief, an award of unpaid minimum wages and an additional amount as liquidated damages to Plaintiffs and the members of the Class;

G.      On the fifth claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiffs and the members of the Class;

H.     On the sixth claim for relief, and award of unpaid compensation for "overtime gap time" and an additional amount as liquidated damages to Plaintiffs and the members of the Class;

I.     On the seventh claim for relief, an award of reimbursement, restitution, and disgorgement from Defendants of wages improperly retained by Defendants to the Plaintiffs and the members of the Class;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class and Collective, pursuant to the FLSA and PMWA, respectively; and

K.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Date: 3/25/2024          BY:   */s/ Peter C. Wood, Jr.*
                               Peter C. Wood, Jr., Esq. (ID No. 310145)
                               **MOBILIO WOOD**
                               900 Rutter Ave., Box 24
                               Forty Fort, PA 18704
                               Phone: (570) 234-0442
                               Fax: (570) 266-5402
                               peter@mobiliowood.com

                               *Co-Counsel for Plaintiffs Dawn Ubry and Kevin Boyce*

                               Alex Pisarevsky, Esq. (NJ 029262008)
                               (Seeking admission *Pro Hac Vice*)
                               **COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
                               Park 80 West-Plaza One
                               250 Pehle Avenue, Suite 401
                               Saddle Brook, NJ 07663
                               Phone: (201) 845-9600
                               Fax: (201) 845-9423
                               ap@njlawfirm.com

*Co-Counsel for Plaintiffs Dawn Ubry and
Kevin Boyce*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAWN UBRY, and KEVIN BOYCE, individually and on behalf of all similarly situated persons, | No. 3:24-CV-00039 |
| | (Judge Mehalchick) |
| Plaintiffs, | |
| v. | |
| METZ CULINARY MANAGEMENT, LLC f/k/a METZ CULINARY MANAGEMENT, INC., METZ ENTERPRISES, INC., and DOE DEFENDANTS 1-10, | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 25th day of March, 2024, the foregoing Amended Complaint was electronically filed and served on the following counsel of record via the Court's ECF filing system:

Stephanie J. Peet, Esq.
Daniel F. Thornton, Esq.
Jackson Lewis, P.C.
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
stephanie.peet@jacksonlewis.com
daniel.thornton@jacksonlewis.com

Jeffrey A. Cohen, Esq.
Flaster/Greenberg PC
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
jeff.cohen@flastergreenberg.com


Date: 3/25/2024              BY:   */s/ Peter C. Wood, Jr.*
                                   Peter C. Wood, Jr., Esq. (ID No. 310145)
                                   **MOBILIO WOOD**
                                   900 Rutter Ave., Box 24
                                   Forty Fort, PA 18704
                                   Phone: (570) 234-0442
                                   Fax: (570) 266-5402
                                   peter@mobiliowood.com

                                   *Co-Counsel for Plaintiffs Dawn Ubry and*
                                   *Kevin Boyce*